IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL HALL, )
)
        Plaintiff, )
)
vs. ) Case No. 10–cv–214–MJR–SCW
)
SUPERVISOR DAVID BENDOFF and )
DON CLARK, )
)
        Defendants. )

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff has exhausted his administrative remedies, that the Court **DENY** Defendants' David Bendorff's and Don Clark's[1] motion for summary judgment (Doc. 40), and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Findings of Fact

**A. Procedural Background**

Plaintiff filed his Amended Complaint against Defendants on September 12, 2010

---

[1] The Court notes that Defendant Lisa Shemonic was a party to the presently pending motion for summary judgment (Doc. 40). However, a short time after holding the *Pavey* hearing, Plaintiff sought to dismiss Defendant Shemonic (Doc. 60) as he had discovered that she was not the mail room supervisor as he previously believed. Lisa Shemonic has since been terminated as a party to this case.

alleging violations of his First Amendment Rights. Specifically, Plaintiff alleges that the Defendants interfered with and destroyed his outgoing mail, including legal mail in violation of his First and Fourteenth Amendment Rights. Subsequent to filing his Amended Complaint, Defendants filed a motion for summary judgment, arguing that Plaintiff had failed to exhaust his administrative remedies (Docs. 40 & 41). Defendants argued that the ARB was able to locate only three grievances on file related to mailroom issues, including grievances received by the ARB on January 4, 2010, October 28, 2010, and March 21, 2011. The grievance received on January 4, 2010 dealt with grievances dated July 25, 2009 and October 7, 2009, but did not mention any of the Defendants and was returned for failure to obtain any responses at the institutional level. The grievance received by the ARB in October 2010 consisted of grievances dated October 24, 2010 and October 25, 2010, did not mention Defendants and was returned for failure to obtain responses from anyone at the institutional level. The grievance received March 21, 2011 consisted of numerous grievances including one dated March 14, 2011. That grievance did mention Mr. Clark but was ultimately denied by the ARB. Based on the Seventh Circuit's opinion in *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008)**, the undersigned held a hearing in this matter on November 3, 2011. The following recommendations are based upon the evidence adduced at that hearing.

**B.      Factual Background**

At issue are several grievances allegedly filed by Plaintiff in 2010 and 2011. At the *Pavey* hearing, the Court noted that two of the grievances on record with the ARB were filed in October 2010 and March 2011, after the operative date for the filing of this case, September 20, 2010[2], and thus were

---

[2] The undersigned noted that while the original Complaint in this case was filed on March 18, 2010, Plaintiff had filed subsequent Amended Complaints, the last being filed on September 20, 2010, prior to this matter being referred to this Court and ultimately served on Defendants. As the prior Complaints were filed prior to summons being issued for Defendants and the case passing this Court's § 1915 review, September 20, 2010, the date the final Amended Complaint was filed, was

not considered fully exhausted prior to filing suit. That left the consideration of a grievance filed with the ARB in January 2010 as well as the more than fifty (50) grievances Plaintiff claimed were filed but either lost or missing. There appears to be no record of the fifty grievances Plaintiff allegedly filed with either the ARB or Menard Correctional Center.

At the hearing, Plaintiff testified that he submitted over fifty (50) grievances but they continuously disappeared or went missing. The only way that he was allowed to submit grievances was by placing them in the bars of his cell for the guards or his counselor to pick up and place in the grievance mailbox, and after he handed them off, he never saw the majority of the grievances again. While he offered no proof as to what happened to the grievances once they were taken from his cell, in part because, he argued, that he was behind a sealed door in his cell and was not able to see how the grievances were handled, he testified that he believed that the correctional officers threw them away as part of their culture of protecting their fellow guards. He stated that when his grievances went unanswered, he would send the grievance to Betsy Spiller, the head counselor, to inform her that his grievances were going unanswered. However, he alleges that Spiller only responded to his concerns on one occasion.

Plaintiff also noted inconsistencies in the affidavits provided by Jackie Miller from the ARB and Janette Cowan, Grievance Officer at Menard Correctional Center. Plaintiff pointed out that while Jackie Miller stated under oath that she only located three grievance from Plaintiff and that the grievance received January 4, 2010 contained only two grievances (Doc. 41 Ex. A), he actually sent her eight grievances in a single package. He stated he sent grievances to the ARB without the institutional responses because he never received answers to his grievances at the institutional level, but the ARB would send them back because they lacked responses from the grievance officer and others at the

---

labeled as the operative date for considering the timeliness of Plaintiff's exhaustion attempts.

institutional level. As to Janette Cowan's sworn statement that she searched the grievance records and did not discover any grievances filed by Plaintiff related to mail room issues (Doc. 41 Ex. B), Plaintiff pointed to a contradictory statement in a disciplinary report from August 2009 that Cowan had received a grievance from Plaintiff regarding mail room staff (Doc. 53-1 at p. 10).

Barb Mueller, a correctional counselor at Menard Correctional Center, also testified as to Plaintiff's grievances. Mueller testified that as a correctional counselor, she is required to meet with inmates in segregation every thirty (30) days and general population inmates every sixty (60) days. Mueller stated that when she meets with inmates she makes notations of those meetings which then go into a Cumulative Counseling Summary (Ex. C). Mueller noted specific dates that she met with Plaintiff about lost mail. On July 27, 2009, she met with him because the warden's office had received a message from Plaintiff stating that he needed to speak to someone about a crisis. Mueller went to meet him immediately, thinking he was distraught or upset, but instead he handed her a ten page grievance about lost mail. Mueller testified that she took the grievance and on her way back to her office she met the grievance officer. She showed the grievance officer the grievance and that officer took control of the grievance and took it to the Warden's office (Ex. C). Mueller noted that the grievance was returned to her on August 17, 2009 and that she answered and returned the grievance, informing Plaintiff that she was not able to look for "lost" mail.

Mueller also testified that she made two entries in the Cumulative Counseling Summary (Ex. C) in October of 2009. A grievance was received on October 20, 2009 stating that the staff was destroying his outgoing mail. She noted that she was not sure who the grievance was from at first because it did not have his name or inmate number on the top, but she was eventually able to determine that Plaintiff had sent the grievance. She returned the grievance, stating that she was unable to verify his allegations. She spoke with Plaintiff the following day regarding the grievances, the fact that he failed to place his name or number on the form and his issues with the mail. He also asked how much good time he had lost. Mueller stated that she forwarded him the information he requested through the

institutional mail.

On November 17, 2009, Mueller testified that she received a very confusing grievance which she believed dealt again with mail issues. While the grievance indicated that Mueller could locate the lost mail, she wrote back that she was unable to locate missing mail and that she had spoken with staff and no one had tampered with his mail. Again, on November 24, 2009 she spoke with Plaintiff regarding his mail issues. This time he complained that Lisa Madigan had never received legal mail he had sent and alluded to a conspiracy among the staff to tamper with his mail. Mueller obtained a certified mail receipt from Plaintiff and the staff indicated they would try to trace the mail even though Plaintiff had not requested a receipt for delivery.

Mueller also discussed a grievance she received on January 26, 2010, again regarding his belief that his mail was disappearing and that the staff was tampering with his mail. The grievance listed various addresses he allegedly sent mail to but did not include any dates as to when he sent the mail. Mueller replied that she had obtained mail receipts showing that his mail had been sent; she also attached a trust fund statement where a publishing company was sent money from his account. She informed Plaintiff that his mail was indeed being processed through Menard, but she could not determine if it actually reached its intended destination once it left Menard. She recommended that Plaintiff pay extra for certified mail so that he would receive a return receipt to insure his mail reached its destination.

At the close of evidence, Defendants argued that while the Cumulative Counseling Summary indicated that Plaintiff had complained of mail room issues to his counselor, Jeanette Cowan's affidavit indicated that Plaintiff did not then follow through with the grievance process by then submitting his grievance to the grievance counselor after failing to obtain the answer he sought from his counselor. Defendants' counsel did express confusion over Cowan's alleged statement in the disciplinary report that she had received a grievance regarding mail room issues on July 25, 2009 as the Cumulative Summary only indicated a grievance received on July 27, 2009 by Mueller that was then

handed presumably to Cowan for further discussion with the Warden before being returned to Mueller in August. Counsel noted that there was no indication that Plaintiff resubmitted the grievance to Cowan after he received a response from Mueller regarding his July 27, 2009 grievance.

The undersigned also inquired of Defendant's counsel as to an entry in the Cumulative Counseling Summary dated January 13, 2010. That entry, entered by Jeanette Cowan, indicated that she had received numerous grievances sent by Plaintiff to the ARB regarding Plaintiff's allegedly tampered mail. Two grievances dated July 24, 2009, two grievances dated July 25, 2009, and grievances dated June 9, 2009, October 13, 2009, and October 7, 2009 were returned to Cowan who subsequently returned them to Plaintiff because he had failed to follow proper procedures and the grievances were now outside the time frame for filing (Ex. C at p. 4). Jackie Miller's affidavit indicated that the ARB received grievances on January 4, 2010 that were returned for Plaintiff's failure to obtain the proper responses at the institutional level (Doc. 41 Ex. A at ¶ 7). However, according to Miller's sworn testimony that set of grievances included only two grievances, one from July 25, 2009 and the other from October 7, 2009. It was unclear whether the grievances Miller referred to were the same set of grievances returned to Cowan in January 13, 2010.

Due to the conflicting nature of the exhibits and affidavits presented, the undersigned Ordered Defendants to obtain copies of the grievances received by Cowan from the ARB on January 13, 2010 and submit those to the Court (Doc. 55). On November 10, 2011, Defendants submitted the required supplement, stating that they could not locate the majority of grievances listed in the January 13, 2010 entry. The ARB was only able to locate one of the grievances filed July 25, 2009, and the grievances dated October 13, 2009 and October 7, 2009 (Doc. 59; *See also* Exs. D, E, & F).

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment

as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative

remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

A.   **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Hall was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the

offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a)**. If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 U.S.C. §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 U.S.C. §504.850(g)**.

**B.     Analysis**

Defendants argue that Plaintiff has failed to exhaust his administrative remedies because he failed to submit grievances at the institutional level before submitting them to the ARB. Specifically, Defendants point to the fact that Cowan's sworn affidavit states that she never received any grievances

from Plaintiff regarding his mail room issues and grievances received by the ARB on January 4, 2010[3] were returned for failure to obtain a counselor's, grievance officer's, or chief administrative officer's response.  Plaintiff, however, argues that he submitted numerous grievances to the grievance officer which went unanswered and, as an inmate, he could only relay the grievances through the guards and hope that they turn the grievances in to the proper location.  Plaintiff basically argues that he did all he could to exhaust his grievances but that he was prevented at the institutional level by the consistent failure by Menard staff to answer grievances he submitted.  *See Walker v. Sheahan*, **526 F.3d 804, 809 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at *3 (S.D. Ill 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)))**.

Failure to exhaust is, of course, an affirmative defense and thus the burden is on the Defendants to prove that Plaintiff failed to exhaust his administrative remedies. *See Kaba*, **458 F.3d at 681 (citing** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)(exhaustion is an affirmative defense, thus placing the burden of proof on the prison authorities))**.  Here, the undersigned finds that Defendants have failed to meet that burden.  Defendants have presented the Court with inconsistent and contradictory evidence which at times calls the reliability of their witnesses and exhibits into question.  In particular, they have presented the affidavit of Jeanette Cowan, grievance officer at Menard, who, in her sworn testimony, insists that Plaintiff never submitted a grievance to her office

---

[3] The Court notes that grievances received by the ARB on October 28, 2010 and March 21, 2011, were filed with the ARB after the filing of this Complaint and thus are not relevant for purposes of this inquiry.  Only grievances filed before the filing of this Complaint can be considered as plaintiffs are required to fully exhaust their administrative remedies prior to filing suit. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**.

regarding his issues with the mail and mail room staff. However, a disciplinary report from August 11, 2009 indicates that Cowan received a grievance from Plaintiff on July 25, 2009 regarding a C/O stopping a letter Plaintiff tried to send (Doc. 53-1 at p.10). Further, counselor Mueller indicated that she had given a grievance dated July 27, 2009 to Cowan to report to the Warden (Ex. C). Defendants were never able to establish whether the grievances dated July 25, 2009 and July 27, 2009 were the same grievances or separate grievances received by Cowan on separate occasions, but Cowan fails to indicate her receipt of either grievance in her affidavit (Doc. 41 Ex. B). The record clearly contradicted or at least called into question Cowan's sworn statement that she never received grievances related to Plaintiff's mail.

Defendants also presented contradictory evidence from the ARB. A review of the ARB records by Jackie Miller indicated that the ARB received grievances regarding Plaintiff's mail on January 4, 2010, October 24, 2010 and March 21, 2011 (Doc. 41 Ex. A). The January 4, 2010 grievance received by the ARB, according to Miller's sworn testimony, including grievances dated July 25, 2009 and October 7, 2009 (*Id.* at ¶7). However, the Cumulative Counseling Summary submitted by Defendants in support of their motion for summary judgment stated that Cowan had received grievances from the ARB on January 13, 2010 which included grievances dated June 9, 2009, October 13, 2009, October 7, 2009, two grievances dated July 24, 2009, and two grievances dated July 25, 2009 (Ex. C). The undersigned Ordered Defendants to locate the grievances filed with the ARB but they were unable to locate the majority of those grievances returned to Cowan (Docs. 55 & 59). However, the ARB did have in its possession the grievance dated from October 13, 2009, a grievance Miller had previously stated in her sworn testimony that the ARB had never received (Doc. 59 at ¶ 5; Ex. E).

The testimony and evidence presented by Defendants is, at best, contradictory, and does not clearly show whether Plaintiff merely failed to exhaust his administrative remedies by failing to pursue his grievances through the institutional level or whether Plaintiff tried to exhaust his administrative remedies and was prevented from doing so. Plaintiff testified that he tried to submit

numerous grievances that were never returned and there is evidence that Plaintiff did submit grievances on July 25 and 27, 2009 that were provided to the grievance officer, but were never listed on the Cumulative Counseling Summary or labeled as being filed by Cowan. There is also evidence that Plaintiff submitted eight grievances to the ARB when they only had on their file two grievances, even though a third grievance was found upon further review of the ARB. Given the confusing and often contradictory evidence regarding whether Plaintiff filed certain grievances, it is possible that Plaintiff, indeed, submitted grievances that were either lost or never returned to him by the grievance counselor and then submitted them directly to the ARB when he failed to receive an answer at the institutional level. Clearly, from the evidence presented, Defendants have not met their burden of showing that Plaintiff failed to exhaust his administrative remedies prior to filing suit. Thus, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' motion for summary judgment (Doc. 40).

### IV. Conclusion and Recommendation

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Defendants have not met their burden of establishing that Plaintiff and failed to exhaust his administrative remedies and **DENY** Defendants' motion for summary judgment (Doc. 40). Should this Report and Recommendation be adopted, the claims against David Bendoff and Don Clark will still remain in the case.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

IT IS SO ORDERED.

DATED: November 18, 2011

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge